## Donohue Estate

*Samuel Evans Ewing, 3rd,* and *Thomas S. Weary,* for accountants.

MacElree, P. J., August 29, 1966.—. . . As stated in the petition for adjudication and statement of proposed distribution, the preliminary questions requiring interpretation and adjudication are as follows:

". . . One of the assets of the estate consists of decedent's right, title and interest in the design of Donobilt Boilers including certain patents. Certain of these boiler designs were licensed to Utica Radiator Corporation at the time of decedent's death which license provided for the payment of royalties to the decedent by the licensee upon the sale of boilers. The account, at page 4, reflects receipts of royalties under this license agreement in the amount of $34,089.61. The court is requested to determine what part if any of these royalty receipts should be allocated to principal and what part if any of them should be allocated to income.

"The account, at pages 7 and 8, reflects payments made by the executors for items related to the development and testing of various boilers which had been contracted for by the decedent in his lifetime. The court is requested to determine whether these expenses should be charged against principal or income, or part against each".

. . . It is submitted by counsel for accountants that the subject estate presents a unique and difficult question of apportionment of receipts between principal and income in that, as counsel for accountants view the situation, it is not clear whether the executors are engaged in a business with respect to the boilers within the meaning of section 7 of the Principal and Income Act of July 3, 1947, P. L. 1283, 20 PS §3470.7 et seq., and suggest if it is a business, the text of section 7 cannot successfully be applied to the facts in the subject estate.

It is further suggested that if the boilers are an investment and not a business, section 3(1) of the act would apply, except that the boilers would be considered "wasting assets" within the meaning of section 3(4), and that the problem is excluded from the coverage of the act and left to case law.

Counsel further suggests they have been unable to find helpful case law. Accordingly, counsel suggests there is no way of apportioning the royalties between principal and income except by allocating a percentage of receipts to income and the balance to principal.

It is suggested on behalf of accountants that this court charge gross royalties with the continuing expenses and new investment in the boilers, and then allocate the net royalties 33⅓ percent to income and 66⅔ percent to principal.

Decedent's will does not indicate testator's intent with regard to apportioning the royalties between principal and income . . .

If managing the boilers is a business, section 7 of the Principal and Income Act of 1947 would be applicable.

This court is of opinion and so concludes that the Donohue estate's operations, with respect to the boiler designs, is a business within the meaning of the statute.

It is suggested by counsel, and affirmed by this court, that unquestionably it was operated as a business by Mr. Donohue during his lifetime.

Applying section 7(3), "Where such business does not consist of buying and selling property, the net income shall be computed in accordance with the customary practice of such business, but not in such way as to decrease the principal".

It appears from the notes of testimony that decedent never did determine the net income from his boiler designing operations.

According to the testimony adduced, he simply invested his time and money in developing the designs and obtaining the dies and patterns and then, in due course, started receiving royalties, but he never systematically determined his net income from this operation.

There was no testimony as to any "customary practice" with respect to determining net income in such a business.

In an exhaustive brief filed on behalf of accountants, counsel refers to certain conclusions to be drawn if management of the boilers is not a business. In our opinion, these matters need not now be discussed, by reason of the conclusion which this court has reached.

This court is of opinion that a proper approach to the solution of the question submitted is to allocate a percentage of royalties to income and the balance to principal.

Such an approach was adopted by the legislature in dealing with the problem of allocating royalty receipts from natural resources: see section 9 of the Principal and Income Act of 1947.

Under the provisions of this section, the receipts from natural resources are allocated one third to income and two thirds to principal, with a special provision where the life tenant is the surviving spouse. While, as pointed out in counsel's brief, there appears to be nothing in the natural resources situation which compels the conclusion that the proper allocation is one third-two thirds, the legislature saw fit to choose a percentage basis and evidently felt that one third-two thirds justly balances the interest of life tenants and remaindermen.

However, we find no good reason why we should adopt a different formula. Nothing in the statute precludes the court from adopting the principle provided in said section 9, inasmuch as there appears to be no overriding difference between receipts from natural resources and royalties from the Donobilt boilers that would make the one third-two thirds allocation inappropriate.

A further question arises, as set forth in the concluding paragraph of the preliminary questions, as stated by counsel for accountants, to wit:

"The account as stated at pages 7 and 8 reflects payments made by the executors for items related to the development and testing of various boilers which had been contracted for by the decedent in his lifetime, and the Court is requested to determine whether these expenses should be charged against principal or income or part against each".

The executors' first account shows on pages 7 and 8 the following credits charged to principal that represent either current business expense incurred in connection with the boiler business or investment therein that should be capitalized, totalling $6,716.76:

Current expense:

| | |
|---|---:|
| John M. Breen office, rent to 10/31 (Lease to 10/31/65) | 1,260.00 |
| Joseph M. Broe, draftsman | 252.00 |
| Main Line Telephone and Secretary Service | 17.50 |
| Barclay Bros. (Blue Prints) | 48.39 |
| Lansdale Transportation Co. | 31.20 |
| | $1,609.09 |

Investment to be capitalized:

| | |
|---|---:|
| Robert J. Nebesar, engineer (contracted to handle tests American Gas Association) | 415.00 |
| American Gas Association (contracted to test new Series of Boilers) | $3,101.30 |
| Repco Products (boiler parts) | 375.65 |
| Utica Radiator Corp. (boiler parts) | 116.60 |
| Dunkirk Radiator Corp. (additions to patterns) | 805.00 |
| Joseph Sbar (bill 12/4/64 purchase of boiler) | 294.12 |
| | $5,107.67 |

These expenses were incurred in connection with the new gas fired series of boilers.

Under sound business accounting principles, the expenses would be charged against current gross income, and the capitalized investment would be set up on the books of the business by charging cash as paid out and debiting a capital investment account to be amortized out of future royalties. In any event, both current expense and new investment must be paid in cash.

This court having adopted the approach suggested by counsel for accountants with respect to allocation of receipts to principal and income, it becomes unneccessary to set up the capitalized investment account and then amortize this investment from future royalties.

In stating a supplemental account, the executors (and trustees) are directed to charge all current expenses and investment against gross royalties on an annual basis and then divide the net royalties between principal and income, as hereinbefore set forth, by reason of which each will bear the expense in the same proportions as they participate in net royalties. . . .